JULIE A. MERSCH, ESQ.
Nevada Bar No. 004695
LAW OFFICE OF JULIE A. MERSCH
701 S. 7th Street
Las Vegas, NV  89101
(702) 387-5868
Fax: (702) 387-0109
jam@merschlaw.com
*Attorney for Plaintiff Richard Mecall, DDS*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| RICHARD MECALL, DDS | CASE NO.: |
| Plaintiff, | |
| CANADA LIFE ASSURANCE COMPANY OF AMERICA; DOES I through V inclusive; and ROES I through V, inclusive, | **COMPLAINT** |
| Defendant. | |

Plaintiff RICHARD MECALL, DDS, by and through his attorney, JULIE A. MERSCH, ESQ., complains and alleges as follows:

**PARTIES**

1. There is complete diversity between plaintiff and defendants and this court has jurisdiction pursuant to 28 U.S.C. § 1332.

2. At all times relevant, Plaintiff, RICHARD MECALL, DDS (hereafter "MECALL"), was and is a resident of Clark County, Nevada.

3. At all times relevant, Defendant CANADA LIFE ASSURANCE COMPANY OF AMERICA (hereinafter "CANADA LIFE")  is and was an American corporation, with its principal place of business in Colorado, and which intentionally availed itself of and subjected itself to all laws and remedies available under Nevada law. CANADA LIFE is the successor by merger of Crown Life Insurance Company.

4. At all times relevant herein, CANADA LIFE underwrote and performed claim handling functions relating to the disability policies at issue herein, including the ultimate

decision to terminate payment of MECALL's disability benefits.

5. That the true names and capacities, whether individual, corporate, associate, or otherwise, of the Defendants named herein as DOES I through V and ROE CORPORATIONS I through V inclusive, are unknown to Plaintiff at this time and Plaintiff, therefore, sues said Defendants by such fictitious names. Plaintiff is informed and believes and therefore alleges, that each of the Defendants designated as DOES and ROE CORPORATIONS or any other entity, are responsible in some manner or involved in the handling of the subject claim including but not limited to the investigation, determination and/or resolution of the subject claim and caused damages proximately to Plaintiff as herein alleged, and Plaintiff will ask leave of this court to amend his Complaint to insert the true names and capacities of said DOES and ROES when the same become ascertained, and join said Defendants in this action.

## GENERAL ALLEGATIONS

### The Insurance Contracts

6. On or about May 20, 1981, MECALL applied for a disability insurance policy to Crown Life. As a consequence of this application, on or about October 8, 1981, Crown Life issued policy no. CR3500964 to MECALL. On or about September 30, 1983, MECALL applied for an increase in his coverage amount under policy no. CR3500964. On or about January 11, 1984, Crown Life approved the increase in coverage (hereafter "subject policy 1").

7. On or about April 3, 1991, MECALL applied for another disability insurance policy to Crown Life. As a consequence of this application, on or about August 29, 1991, Crown Life issued policy no. CR3505706 to MECALL ("subject policy 2").

8. At all times relevant, MECALL timely paid his insurance premiums under the subject policies.

9. In exchange for his payment of premiums under subject policy 1, CANADA LIFE promised to pay MECALL a monthly benefit in the amount of $5,650.00 if he became disabled from performing his regular occupation.

10. In exchange for his payment of premiums under subject policy 2, CANADA LIFE promised to pay MECALL a monthly benefit in the amount of $2,000.00 if he became disabled

from performing his own occupation.

11. Under subject policy 1, "Total Disability" means, in pertinent part:

[T]hat you are unable, due to Injury or Sickness, to engage in the material and substantial duties of Your regular occupation. . .

12. Under subject policy 1, "Injury" means:

[A]ccidental bodily injury which occurs while this policy is in force and which causes disability or loss while this policy is in force.

13. Under subject policy 1, "Sickness" means:

[S]ickness or disease which first manifests itself while this policy is in force and which causes disability or loss while this policy is in force.

14. Under subject policy 2, "Total Disability" means, in pertinent part:

T]hat you are unable, due to Injury or Sickness, to engage in your regular occupation. . .

15. Under subject policy 2, "Injury" means:

[A]ccidental bodily injury which occurs while this policy is in force and which causes disability or loss while this policy is in force.

16. Under subject policy 2, "Sickness" means:

[S]ickness or disease which first manifests itself while this policy is in force and which causes disability or loss while this policy is in force.

17. MECALL's occupation at the time of his disability was periodontist.

18. Under subject policy 1, the "maximum benefit period" for which disability benefits as a result of "Sickness" were payable was October 8, 2015. Under subject policy 2, the "maximum benefit period" for which disability benefits as a result of "Sickness" were payable was August 8, 2015.

19. Under subject policies 1 and 2, the "maximum benefit period" for which disability benefits as a result of "Injury" are payable is the lifetime of MECALL.

### MECALL's PERTINENT MEDCAL HISTORY LEADING TO DISABILITY CLAIMS UNDER THE SUBJECT POLICIES

**A.  Left Hip Condition**

20. Due to avascular necrosis of MECALL's left hip, he underwent a left hip replacement surgery with a Depuy medical implant on May 31, 2006.  Consequently, MECALL

was temporarily unable to work full-time for time periods beginning in March 2006 through March 2007. MECALL made a claim for benefits under the subject policies, which CANADA LIFE paid.

21. Despite his hip replacement surgery with the ASR Hip Replacement System ("ASR/XL hip device") in May, 2006, MECALL's left hip condition progressively worsened, to the point that he could no longer perform his regular occupation on a full-time basis beginning on or about January, 2009. MECALL submitted a claim for benefits under subject policy 2 as a result of his worsening hip condition. CANADA LIFE approved and paid this claim under the total disability and additional income benefit coverages of subject policy 2 due to, *inter alia*, its determination that MECALL suffered from osteonecrosis of the left hip.

22. The hip symptoms that prevented MECALL from performing his regular occupation on a full-time basis as of January, 2009 included, *inter alia,* trochanter bursitis, lliopsoas impingement, lliopsoas tendonitis, groin pain, clicking of the left hip, peripheral neuropathy, capsular impingement, metal sensitivity, crepitus, pain with external rotation, pain with abduction, pain with flexion, abnormal heel strike, abnormal toe off, positive straight leg raise, and abnormal heel walk (hereafter "hip symptoms post-implant").

23. On December 2, 2010, MECALL submitted to surgery to remove the ASR/XL hip device. By that date, the FDA had recalled the device from commerce (on August 26, 2010) due to, *inter alia*, toxic levels of metal released into the human body causing tissue damage leading to acute and chronic pain and other medical conditions.

24. On December 1, 2010, blood results revealed that MECALL had toxic levels of both Cobalt and Chromium, leading to toxic neuropathy, as well as findings intra-operatively of necrosis, fibrosis, metal pigmentation, histocytic infiltration, metal debris, osteolysis, synovitis, and metal hypersensitivity.

**B.   Lumbosacral Disease of the Low Back**

25. In approximately 1990, MECALL was diagnosed with lumbosacral disease of the lower back, confirmed on MRI in March 2006.  MECALL received a special exception for his pre-existing back condition upon the issuance of subject policy 2 in August 1991.

26. From 1991- November 2009, MECALL's back condition was asymptomatic: he never required spinal surgery; it did not cause pain; did not prevent him from performing his regular occupation; did not limit his range of motion; did not prevent him from bending, rotating, standing, or sitting; never caused bowel or bladder incontinence; did not require medical care or the use of over-the-counter or prescription medications; and never limited his ability to participate in recreational activities or perform the activities of daily living.

27. On or about August 31, 2010, MECALL was unable to work at all and presented a claim for total disability benefits under subject policy 1. CANADA LIFE accepted the claim and paid the claim through October 8, 2015. Upon information and belief, CANADA LIFE determined that MECALL was disabled due to Lumbar Stenosis.

**C.  Injury to Lower Back on December 1, 2009 (Aggravation of Pre-Existing, Asymptomatic Lumbosacral Disease)**

28. As a result of the hip symptoms post-implant (resulting from the ASR/XL defective hip device), MECALL sustained injury while dismounting a stationary bicycle on or about December 1, 2009 (hereafter "bike injury").  Specifically, as MECALL placed all of his weight on his left leg to exit the stationary bike, he felt sharp pain in his left hip which caused him to fall backwards, hard and awkwardly, twisting his back as he landed on the bicycle resulting in immediate pain.  As a result of the bike injury, and in addition to the acute pain, MECALL was unable to stand for long periods of time, bend, or rotate his spine.

29. As a result of the bike injury, and after no relief of his symptoms, MECALL reported to his primary care physician on December 11, 2009.  Over the next six (6) months, MECALL developed worsening symptoms including low back pain, bowel and bladder incontinence, and impotence.  He received physical therapy; had a number of radiological studies; sought treatment at the Mayo Clinic in Arizona; and submitted to emergency surgery in May 2010 due to a diagnosis of cauda equina syndrome.

30. Prior to the bike injury, MECALL had never been diagnosed with cauda equina syndrome; suffered from bowel or bladder incontinence or impotence;  or, as stated above, had no restrictions, symptoms, or impairments from 1991 through December 1, 2009 related to his

lumbosacral disease.

## CLAIMS HISTORY

### MECALL APPEALS CANADA LIFE'S CESSATION OF DISABILITY PAYMENTS AND DETERMINATION THAT HIS DISABILITY IS DUE TO SICKNESS VS. INJURY

31. On March 18, 2015, CANADA LIFE advised MECALL that payments under subject policy 1 and subject policy 2 would end on 10/8/15 and 8/8/15, the respective "expiry dates" of the subject policies and the "maximum benefit periods" for disabilities due to "Sickness." (hereafter "notice of termination" letter).

32. CANADA LIFE's notice of termination letter constituted the first time it had conveyed to MECALL that his disability was due to SICKNESS.

33. In response to the notice of termination letter, MECALL, by and through counsel Robert L. Fogel, Esq., contacted CANADA LIFE to assert that MECALL's disability was due to INJURY, not to sickness [and therefore benefits should not have been terminated]. Mr. Fogel asked CANADA LIFE to review its "files, medical records, and physician reports" and "contact [him] to discuss the error in calling his disabilities as due to 'sickness.'" Letter dated April 2, 2015 from Robert L. Fogel to Evelyn Ross, The Canada Life Insurance Company.

34. On or about August 6, 2015, after investigation, CANADA LIFE responded to Mr. Fogel's letter. It asserted that MECALL's disability was not due to INJURY because "metal toxicity" was a known side effect of his left hip replacement with a metal implant and further, that MECALL had symptoms of cauda equina syndrome "long before" MECALL's injury on the stationary bicycle in December 2009. Letter dated August 6, 2015 from Linda Millar, Canada Life Assurance Company to Robert Fogel, Esq.

35. On or about August 25, 2015, MECALL's counsel responded to Millar's letter, asserting *inter alia,* 1) his medical records prior to December 2009 do not reveal any cauda equina symptomatology; and 2) the new set of symptoms was due to an aggravation of MECALL's pre-existing (but asymptomatic) spondylosis on December 1, 2009 when he suffered the bike injury. Letter dated August 25, 2015 from Robert Fogel, Esq. to Linda Millar,

Canada Life. Mr. Fogel urged CANADA LIFE to review the file and "promptly reconsider your decision to terminate benefits under the 'sickness' definition as it is plainly inappropriate under the facts and circumstances." Id.

36. On or about October 30, 2015, CANADA LIFE responded to Mr. Fogel's August 25, 2015 letter and continued to assert that "Dr. Mecall's hip replacement and cauda equina syndrome conditions were payable under the Sickness Disability provision of his policies and not considered an accidental injury." CANADA LIFE advised, nevertheless, that an internal appeal review panel comprised of "experienced individuals who were not involved in the day to day handling of MECALL's claim" would be reviewing "his claims." Letter dated October 30, 2015 from Linda Millar, Canada Life Assurance Company to Robert Fogel, Esq..

37. In a letter dated December 17, 2015, CANADA LIFE, by and through Denise Ratliff, advised Mr. Fogel that the appeal panel "concluded their review [of the file] and recommended the claim be submitted for an expert review by an individual who specializes in Cauda Equina and hip conditions." Letter dated December 17, 2015 from Denise Ratliff, ALHC to Robert Fogel, Esq.

38. Despite the appeals panel's recommendation, CANADA LIFE, by and through Ms. Ratliff, ignored it and decided instead that such an expert review was not required and would not be done. Id. at 2. Instead, Ms. Ratliff asserted:

> It is evident from the medical records, doctor's statements and medical reviews that Dr. Mecall's underlying degenerative spinal condition is what caused his pain when he dismounted from the stationary exercise bike.. . . [T]he "fall" you've described recently did not cause Dr. Mecall's disabling condition. Dr. Mecall's disability was caused, not by an accidental bodily injury, but rather by a longstanding degenerative condition that ultimately caused compression of the spinal nerve roots resulting in incontinence and disorder of the coccyx. Therefore, it is our determination that the disability claim that commenced on September 1, 2010 was appropriately classified a sickness.

Id. at 3. In the letter, Ms. Ratliff repeatedly referred to MECALL's groin pain before the bike injury as evidence that his lumbosacral disease was causing disabling symptoms (and not his hip symptoms post-implant and bike injury) as further proof that his disability was not the result of Injury. Id. at 2-3.

39. On January 19, 2016, Mr. Fogel responded to CANADA LIFE/Denise Ratliff's

7

letter. Mr. Fogel reminded Ms. Ratliff that Canada Life's own independent and unbiased appeals panel had recommended that the appropriate specialty be engaged to review MECALL's medical file. He asserted that CANADA LIFE's refusal to accept this recommendation and refer the file for expert review constituted bad faith claims handling. He further suggested that CANADA LIFE's prior medical review with its medical consultant physiatrist was improper and could not be relied upon because the appropriate specialist had not been enlisted to provide medical advice on the question of sickness vs. accident.  <u>Letter dated January 19, 2016 from Robert Fogel, Esq. to Denise Ratliff, Canada Life Assurance Company</u> at 1.

40.  In the letter, Mr. Fogel further explained and distinguished in detail MECALL's relevant medical history related to his left hip symptoms and resulting disability (necrosis of the left hip, a Sickness) from his subsequent disability related to the development of Cauda Equina syndrome as a result of the bike injury, caused by the hip symptoms post-implant (an Injury). He challenged Ms. Ratliff's determination that MECALL suffered Cauda Equina symptoms prior to the bike injury. He identified medical tests and examinations performed which ruled out MECALL's pre-existing lumbosacral disease as contributing to his hip symptoms post-implant, prior to the bike injury.  Finally, he asserted that the groin pain – to which Ms. Ratliff repeatedly cited in her December 17, 2015 letter– was not the result of his pre-existing lumbosacral disease or the development of Cauda Equina syndrome therefrom but rather, was exclusively related to MECALL's hip symptoms post-implant which led to the bike injury and the development of Cauda Equina syndrome. <u>Id.</u> at 2-5.  *See supra*, at para. 22 (describing new symptoms which started after placement of the defective ASR/XL hip device, i.e. "hip symptoms post-implant").

41.  Mr. Fogel concluded his letter by urging CANADA LIFE to follow the recommendation of the appeals panel and refer the file to the appropriate specialist. <u>Id.</u> at 6.

42.  In response, CANADA LIFE, by and through Ms. Ratliff, stated in pertinent part:

> Although it is important for us to understand the medical issues associated with Dr. Mecall's condition, the medical records have already been reviewed by a board-certified physiatrist. Therefore, it is my belief that additional medical review will only be duplicative of what we already have and will not assist us in considering Dr. Mecall's

8

request.

Your letter suggests that you still have questions about the disease process and we can certainly obtain a medical review from another specialist if that is important to you. . .

Letter dated February 19, 2016 from Denise Ratliff/Canada Life Assurance Company to Robert Fogel, Esq. In a letter to Mr. Fogel dated February 23, 2016, Ms. Ratliff memorialized an oral agreement (in a telephone call with Mr. Fogel on February 19, 2016) that CANADA LIFE would "proceed with a medical expert review" [ ] with "an Orthopedist who has medical knowledge of Cauda Equina Syndrome (CES) and hip disease." Letter dated February 23, 2016 from Denise Ratliff/Canada Life Assurance Company to Robert Fogel, Esq.

43. In a letter dated February 25, 2016 to Ms. Ratliff, Mr. Fogel memorialized the subjects discussed in the February 19, 2016 phone call including his concerns that CANADA LIFE was not engaged in a "legitimate appeals process"; that the prior medical consultant's specialty of "physiatry" was not an appropriate specialty for the medical questions at issue; and that CANADA LIFE had ignored MECALL's comments and assertions in Mr. Fogel's January 19, 2016 letter "point[ing] out the various factual and legal errors" in CANADA LIFE's December 17, 2015 letter. Mr. Fogel also questioned "how Canada Life could be fulfilling its legal obligations with respect to the claims and the appeal without even the minimal amount of research on critical topics." Letter dated February 25, 2016 from Robert Fogel, Esq. to Denise Ratliff, Canada Life Assurance Company. Finally, in the letter, Mr. Fogel reserved hope that the orthopedic medical expert would provide a sufficient medical foundation on which CANADA LIFE would conclude that MECALL's disability for which contractual benefits were owed was the result of Injury, not Sickness, and promptly reinstate benefits. Id.

44. In a letter dated April 22, 2016, CANADA LIFE, by and through Ms. Ratliff, reaffirmed its prior conclusion that MECALL's disability was due to Sickness, not Injury, such that disability benefits were no longer payable beyond the expiry dates in subject policy 1 and subject policy 2. See Letter dated April 22, 2016 from Denise Ratliff to Robert Fogel, Esq. In so doing, CANADA LIFE relied on the conclusions of a medical report by Robert Kalb, M.D., who conducted a "paper review" of MECALL's medical records. Included in the letter was a

copy of Dr. Kalb's report.

45. On June 1, 2016, Mr. Fogel responded to Ms. Ratliff's letter. <u>Letter dated June 1, 2016 from Robert Fogel, Esq. to Denise Ratliff, Canada Life Assurance Company</u>. In the letter, he referred to a phone conversation with Ms. Ratliff "a week ago" in which they discussed the fact that CANADA LIFE had not provided Dr. Kalb with a complete set of MECALL's medical records related to his hip condition; his pre-existing lumbosacral disease; and the onset of, and treatment for, his Cauda Equina syndrome. In the letter, Mr. Fogel also expressed dismay that CANADA LIFE had affirmed its decision based on a review of incomplete records and on a "miscomprehension of the medicine." Upon agreement, as set forth in the letter, CANADA LIFE agreed to have Dr. Kalb review the complete medical file. Mr. Fogel agreed to send CANADA LIFE the complete set of records and also prepare questions for Dr. Kalb's review and response. <u>Id.</u> at 2.

46. On October 17, 2016, Mr. Fogel submitted to CANADA LIFE additional medical records for Dr. Kalb's review and questions for him to review and answer. <u>Letter dated October 17, 2016 from Robert Fogel, Esq. to Denise Ratliff, Canada Life Assurance Company</u> (enclosing medical records and questions for Robert Kalb, M.D.).

47. On November 29, 2016, Ms. Ratliff sent a letter acknowledging receipt of Mr. Fogel's June 1st and October 17th letters. <u>Letter dated November 29, 2016 from Denise Ratliff to Robert Fogel, Esq.</u> In her letter, Ms. Ratliff disagreed with Mr. Fogel's assertion there that CANADA LIFE had not provided Dr. Kalb with a complete set of MECALL's pertinent medical records. Ms. Ratliff wrote in pertinent part:

> . . . Dr. Kalb had the records he needed to review your client's medical situation. It is true that Dr. Kalb mentioned the absence of certain historical records, but he did not think they were "critical" or even necessary to the conclusions reached [in] his report. . .
> The entire second paragraph of your letter of October 17, 2016 is contrary to my recollection of our conversation. I did tell you that the medical records mentioned by Dr. Kalb were not intentionally omitted from our submission. We simply did not have those records, as we did not know that Dr. Kalb would mention them. While those records were not in our file, I emphasized that Dr. Kalb was not hindered from rendering an opinion or answering our questions by their absence.
> I emphatically disagree with your declaration that I suggest those records were essential to a complete, independent and fair review of your client's case because I do not believe they are essential to a complete and fair review. Nor do I agree that Canada Life's termination of your client's benefits is in any way dependent upon Dr. Kalb's ability to review the entirety of your client's historical medical records.

Id. at 1-2. In closing, Ms. Ratliff and CANADA LIFE agreed to submit the additional records and Mr. Fogel's questions for Dr. Kalb's review.

48. In a response letter dated December 2, 2016, challenging Ratliff's characterization of the importance of the missing records, Mr. Fogel noted several instances in Dr. Kalb's peer review report (on which CANADA LIFE had relied to uphold its decision to terminate benefits due to sickness) in which he referenced the absence of pertinent medical records which, Fogel argued, prevented Dr. Kalb from providing an independent and accurate medical records review and opinion on the issue of sickness vs. injury. Letter dated December 2, 2016 from Robert Fogel, Esq. to Denise Ratliff, Canada Life Assurance Company. Mr. Fogel wrote in pertinent part:

> It is incomprehensible how you can suggest that Dr. Kalb didn't think the missing records were "critical" to his independent and complete review. Firstly, he never said that in his report. To the contrary, he repeatedly stated how useful the records would have been, and I think it's indisputable that any answers to your questions were based upon incomplete records.

Id. at 2.

49. In the letter, Mr. Fogel also expressed dismay that CANADA LIFE terminated benefits and denied MECALL's appeal without an informed medical opinion based on a complete review of the complete medical records. He averred:

> My concern was not only related to the failure by Canada Life to provide Dr. Kalb with the complete records so he could perform an independent review, but how it was that Canada Life determined to terminate Dr. Mecall's disability payments without the benefit of reviewing complete medical records. I suggested that the decision was made arbitrarily and in bad faith insofar as you admitted that the decision was made without the benefit of the complete medical records. . .

Id. at 3. Mr. Fogel went on to reiterate MECALL's position that the reason for his disability was "INJURY", not "SICKNESS." Id. In conclusion, Mr. Fogel stated he awaited "confirmation that you have submitted the records and questions to Dr. Kalb as promised, and the resulting report with his answers to the questions." Id. at 4.

50. On February 3, 2017, CANADA LIFE, relying on Dr. Kalb's paper review report, upheld its decision to terminate MECALL's disability benefits, concluding that his disability was due to "SICKNESS", not "INJURY." Letter dated February 3, 2017 from Denise Ratliff to

11

Robert Fogel, Esq. Ms. Ratliff explained:

> Dr. Kalb's opinions did not change after reviewing the additional medical records you supplied regarding the onset of the cauda equina, the surgical intervention, and the follow-up records from the orthopedic surgeon. . . .

Id. at 4-5 (attributing disability to pre-existing degenerative disc disease and spinal stenosis --- a sickness – "symptoms separate from his left hip complications"). Ms. Ratliff concluded her letter affirming CANADA LIFE's termination of benefits due to SICKNESS by summarizing its position:

> . . . Dr. Mecall's disability was caused, not by an accidental bodily injury, but rather by a longstanding degenerative condition and disorder of the coccyx that ultimately caused compression of the spinal nerve roots resulting in cauda equina. Therefore, it is our opinion that Dr. Mecall's disability is appropriately classified as a SICKNESS.

Id. at 5 (citing "the medical records, the attending physicians' statements, the independent reviews by the board-certified orthopedist and by MECALL's "own statements" in support of CANADA LIFE's decision).

## FIRST CAUSE OF ACTION

### (Breach of Contract against CANADA LIFE)

51. Plaintiff adopts and incorporates by reference Paragraphs 1 - 50.

52. As a result of the termination of MECALL's disability benefits and its refusal to reinstate benefits beyond the expiry dates under the subject policies, Defendant CANADA LIFE breached its contracts of insurance with its insured.

53. As a result of Defendant's breach, Plaintiff has incurred special damages in excess of $10,000.00, including benefits withheld for the time period beginning October 8, 2015 under subject policy 1 and for the time period beginning August 8, 2015 under subject policy 2 through the present and continuing, and interest thereon.

54. As a further proximate result of the aforementioned conduct of Defendant, Plaintiff has suffered anxiety, worry, mental and emotional distress, all to Plaintiff's general damages in the sum in excess of $10,000.00.

55. As a further result of Defendant's breach, Plaintiff has been forced to retain the services of an attorney and is therefore entitled to reasonable attorney's fees and costs.

**SECOND CAUSE OF ACTION**

**(Breach of the Covenant of Good Faith And Fair Dealing and Contractual Bad Faith against CANADA LIFE)**

56. Plaintiff adopts and incorporates by reference Paragraphs 1 - 55.

57. Defendant knew or should have known that it did not have a reasonable basis to terminate benefits under the subject policies at the expiry dates.

58. Defendant knew or should have known that it did not have a reasonable basis to continue to deny benefits after the expiry dates, after MECALL provided medical and legal documentation which explained why benefits should continue to be paid to him due to total disability as a result of INJURY.

59. Defendant knowingly failed to adequately, objectively, and fairly investigate MECALL's contention that he was entitled to ongoing disability benefits beyond the expiry dates of the subject policies due to total disability as a result of INJURY.

60. CANADA LIFE did not provide a full and fair review of its decision to terminate benefits under the subject policies. MECALL, by and through counsel, had to insist that Ms. Ratliff follow through on the recommendation of the appeals panel to have the appropriate specialist review the medical documentation. Although Ratliff relented and referred the file to an orthopedic doctor, Ratliff's initial refusal to obtain an independent and fair opinion tainted the entire claims review process such that the referral to Dr. Kalb was not made in good faith. CANADA LIFE ratified Ratliff's conduct by approving the ongoing categorization of MECALL's claim as "SICKNESS", not "INJURY" and the consequent ongoing cessation of payments.

61. MECALL, by and through counsel, had repeatedly provided CANADA LIFE with both medical and legal reasons to pay the claim and re-categorize the claim as "INJURY."

62. Despite MECALL's proof of claim and proof of ongoing disability, CANADA LIFE stubbornly refused to pay the claim. By its failure to pay MECALL at any time after October 8, 2015 under subject policy 1 and after August 8, 2015 under subject policy 2, through the present, Defendant has breached the implied duty of good faith and fair dealing

owed to Plaintiff under the subject policies and under common law.

63. MECALL is informed and believes and thereon alleges that Defendant intends to and will continue to deny and withhold benefits in bad faith due Plaintiff unless compelled to pay such benefits by a final judgment of this court.

64. As a result of the Defendant's breach, Plaintiff has incurred special damages in excess of $10,000.00, including benefits withheld Plaintiff for the time period beginning October 8, 2015 under subject policy 1 and for the time period beginning August 8, 2015 under subject policy 2 through the present and continuing, and interest thereon.

65. As a further proximate result of the aforementioned conduct of Defendant, Plaintiff has suffered anxiety, worry, mental and emotional distress, all to Plaintiff's general damages in the sum in excess of $10,000.00.

66. Defendant intended its conduct, as described herein, to cause injury to the Plaintiff, or Defendant carried on with such conduct in conscious disregard for the rights of the Plaintiff, as to subject the Plaintiff to cruel and unjust hardship, such as to constitute malice, oppression, or fraud under NRS §42.005, thereby entitling Plaintiff to punitive damages in an amount in excess of $10,000.00.

67. As a further result of Defendant's breach, Plaintiffs have been forced to retain the services of an attorney and are therefore entitled to reasonable attorney's fees and costs.

### THIRD CAUSE OF ACTION
**(Violation by CANADA LIFE of the Nevada Unfair Trade Practices Act ("NUTPA"))**

68. Plaintiff adopts and incorporates by reference Paragraphs 1 - 67.

69. Defendant engaged in unfair trade practices in violation of NUTPA by failing to adopt and implement reasonable standards for the fair and objective investigation of MECALL's contentions that he was entitled to ongoing payment of disability benefits beyond the expiry dates of the subject policies because he remained disabled as a result of INJURY. NRS 686A.310 (c).

70. Defendant engaged in unfair trade practices in violation of NUTPA by failing to pay benefits when its liability under the subject policies was reasonably clear. NRS

686A.310(e).

71. Defendant engaged in unfair trade practices in violation of NUTPA by failing to provide promptly to MECALL a reasonable explanation of the basis in the subject policies, with respect to the facts of his claims and the applicable law, for termination of the subject claims after the respective expiry dates of subject policy 1 and subject policy 2, or for an offer to settle or compromise the subject claims. NRS 686A.310(n).

72. Defendant knew or should have known that it did not have a reasonable basis to deny benefits.

73. Plaintiff is informed and believes that Defendants intend to and will continue to deny and withhold benefits due Plaintiff in violation of NUTPA unless compelled to pay him benefits by a final judgment of this Court.

74. As a result of the Defendant's unfair practices, Plaintiff has incurred special damages in excess of $10,000.00, including benefits withheld for the time period beginning October 8, 2015 under subject policy 1 and for the time period beginning August 8, 2015 under subject policy 2 through the present and continuing, and interest thereon.

75. As a further proximate result of the aforementioned conduct of Defendant, Plaintiff has suffered anxiety, worry, mental and emotional distress, all to Plaintiff's general damages in the sum in excess of $10,000.00.

76. Defendant intended its conduct, as described herein, to cause injury to the Plaintiff, or Defendant carried on with such conduct in conscious disregard for the rights of the Plaintiff, as to subject the Plaintiff to cruel and unjust hardship, such as to constitute malice, oppression, or fraud under NRS §42.005, thereby entitling Plaintiff to punitive damages in an amount in excess of $10,000.00.

77. As a further result of Defendant's unfair practices, Plaintiff has been forced to retain the services of an attorney and is entitled to reasonable attorney's fees and costs.

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1. For an award of past due benefits with statutory interest thereon and reinstatement of benefits;

2. For an award of all future benefits due under the subject policies as a consequence of Defendant's bad faith;

3. For an award of damages for the physical injury and mental and emotional distress that MECALL has suffered as a consequence of Defendant's bad faith claims handling practices and termination of benefits;

4. For punitive damages in an amount sufficient to punish Defendant and to deter Defendant and others from engaging in similar bad faith conduct in the future;

5. For reasonable attorney's fees and costs of suit incurred, pursuant to NRS 689A.410(5) and/or *Brandt v. Superior Court*, 37 Cal.3d 813, 693 P.2d 796 (1985) or similar law; and

6. For prejudgment and post-judgment interest; and

7. For such other and further relief as this Court finds just and proper.

DATED this 11th day of April, 2018.

                LAW OFFICE OF JULIE A. MERSCH

By:   /s/ Julie A. Mersch
      JULIE A. MERSCH, ESQ.
      Nevada Bar No. 004695
      701 South 7th Street
      Las Vegas, Nevada 89101
      *Attorney for Plaintiff Richard Mecall, DDS*

W:\MECALL\PLDGS\COMPLAINT.2.wpd